# In the United States Court of Federal Claims

No. 17-1168

Filed: August 6, 2024

_____
)
ANTOINE FORD, )
)
                      *Plaintiff*, )
)
  v. )
)
THE UNITED STATES, )
)
                      *Defendant*. )
_____ )

*Jason W. Manne*, Manne Law Office, Pittsburgh, PA, for Plaintiff.

*Brendan Jordan*, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, Washington, D.C., with whom were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, *Douglas K. Mickle*, Assistant Director, and *Alyssa Degner-Lopez*, of counsel, for Defendant.

**ORDER**

**MEYERS, Judge**.

**I.    Background**

      This Order is another in the storied litigation[1] surrounding Plaintiff Antoine Ford's claim for disability and line-of-duty benefits from his time in the United States Navy. On March 25, 2024, the court entered an Opinion that denied the Government's cross-motion for judgment on the administrative record and granted-in-part Ford's motion for judgment on the administrative record. *See* ECF No. 112; *Ford v. United States*, 170 Fed. Cl. 458 (2024).[2] Now, the Government asks the court to reconsider its decision, and ultimately "grant[] our MJAR by holding that the BCNR acted rationally, lawfully, non-arbitrarily, and with substantial evidence,

---

[1] Ford initially filed this case in 2017. ECF No. 1. Since then, the Court has remanded the matter to the BCNR four times. ECF Nos. 19, 72, 101 & 112. The Court has also published two substantive orders on the matter. *Ford*, 170 Fed. Cl. at 458; *Ford v. United States*, 150 Fed. Cl. 220 (2020).

[2] Because the Court outlined the factual and procedural background in that Opinion, it does not recount the entire history of this case again. ECF No. 112 at 1-5; *Ford*, 170 Fed. Cl. at 462-465.

when it sustained the Navy's denial of LCDR Ford's claim for line of duty (LOD) benefits due to PTSD." ECF No. 114 at 1. Additionally, the Government asks the court to "revise its remand instructions following reconsideration of the PTSD LOD issue." *Id.* More specifically, the Government contends the court "erred in holding that the BCNR could not rely on a VA rating determination finding no service connection," and "also erred in holding that the BCNR was required to afford liberal consideration with respect to PTSD for LCDR Ford's LOD determination." *Id.* at 5-6. Lastly, the Government avers that the court erred "in holding that the BCNR was required to conduct a factual investigation." *Id.* at 6.

## II.   Legal Standard

The Government moves for reconsideration primarily under RCFC 54(b).[3] The rule provides that:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and *may be revised at any time before the entry of a judgment* adjudicating all the claims and all the parties' rights and liabilities

RCFC 54(b) (emphasis added). Reconsideration under RCFC 54(b) is available "as justice requires." *Martin v. United States*, 101 Fed. Cl. 664, 671 (2011), *aff'd sub nom. Fournier v. United States*, No. 2012-5056, 2012 WL 6839784 (Fed. Cir. Nov. 27, 2012); *Sacramento Grazing Ass'n, Inc. v. United States*, 154 Fed. Cl. 769, 778 (2021) (holding that the court "finds that the applicable standard of review under RCFC 54(b) is simply 'as justice requires.'"). As the court adopted[4] in *L-3 Communications Integrated Systems, L.P. v. United States*, 98 Fed. Cl. 45, 49 (2011):

> '[A]s justice requires' indicates concrete considerations of whether the court has patently misunderstood a party, has made a decision

---

[3] The Government also mentions RCFC 59. There is debate, however, about the applicability of RCFC 59 to pre-judgment orders. *See E&I Glob. Energy Servs., Inc. v. United States*, 152 Fed. Cl. 524, 530 (2021) (discussing the various approaches to reconsideration motions in this court and concluding "RCFC 54(b) governs reconsideration of interlocutory decisions, while RCFC 59 governs reconsideration of decisions after Judgments"); *Alta Wind I Owner Lessor C v. United States*, 169 Fed. Cl. 1, 9 (2023) (reviewing the parties' arguments regarding Rule 54 and Rule 59 standards and applying "the 'as justice requires' standard set forth by this court for reconsideration of interlocutory orders under RCFC 54(b) to plaintiffs' Motion for Reconsideration."); *Sacramento Grazing Ass'n, Inc.*, 154 Fed. Cl. at 778 ("Despite the differing standards, the *majority* of judges on this court have adopted the less stringent standard of 'as justice requires' on reconsideration of interlocutory orders.") (collecting cases).

[4] The court reviewed other federal courts' decisions and adopted the rationale as laid out by the D.C. district court in *Potts v. Howard University Hospital*, 623 F. Supp. 2d 68, 71 (D.D.C. 2009).

> outside the adversarial issues presented to the [c]ourt by the parties, has made an error not of reasoning, but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the court.

"Despite the flexible standards governing reconsideration herein and the discretion afforded the trial court, reconsideration is not intended, however, to give an unhappy litigant an additional chance to sway the court." *Martin*, 101 Fed. Cl. at 671 (citations omitted); *see also Fla. Power & Light Co. v. United States*, 66 Fed. Cl. 93, 96 (2005) ("Courts possess inherent power to modify their interlocutory orders before entering a final judgment.").

### III. Discussion

The Government first contends the court reweighed evidence and replaced its judgment over the decision of the BCNR. That is not the case. While the arbitrary and capricious standard is highly deferential, "it is not a rubber stamp." *Allied Tech. Grp., Inc. v. United States*, 94 Fed. Cl. 16, 35 (2010), *aff'd*, 649 F.3d 1320 (Fed. Cir. 2011); *see also Rominger v. United States*, 72 Fed. Cl. 268, 273 (2006) ("Although courts afford great deference to the decisions of boards for the correction of military records, that deference is not absolute. Correction boards are obligated to 'examine relevant data and articulate a satisfactory explanation for their decisions.'") (citation omitted). The court outlined the standard it applied and used that standard to evaluate the Navy's actions. Just because the Government is not happy with the court's decision does not mean that the court used the wrong standard.

With that handled, the court reviews the remaining errors the Government alleges.

#### A. Line of Duty versus Service Connection standards.

The Government argues that the court erred by "incorrectly stat[ing]" that the standard for whether an injury is service connected is different from the standard for whether an injury was incurred in the line of duty. ECF No. 114 at 8. The court believes this point is less of an incorrect statement of the law and more of an imprecise word choice. The Government's quibble is with the court's statement that "the standards for service connection under the relevant VA regulations are different from those governing a finding of LOD." *Ford*, 170 Fed. Cl. at 467. Instead of referring to the operative term as "standards," the more precise term would have been "burdens." Indeed, as the court explained (and the Government does not dispute), "for service connection under the VA standards, the veteran must show 'credible supporting evidence that the claimed in-service stressor occurred." *Id.* (citing 38 C.F.R. § 3.304). But before the DoD "[u]nder the relevant LOD standards, the claimant need only show the injury was incurred in the line of duty." *Id.*

The Government contends that "Although the *rating* a veteran may receive from the VA can differ from the amount of LOD pay a service member receives, the threshold inquiry of whether there is a 'connection' between the injury and service, or whether the injury was 'incurred' in service, is the same in both compensation schemes." ECF No. 114 at 9 (emphasis in original). But that is not the point the court was making. Instead, the court was referring to relative burden between the parties of proving the connection. Contrary to the Government's

3

motion, the court never said the BCNR could not rely on the VA's service-connection decision *at all*, instead, the court said the BCNR could not rely on the VA's decision "as dispositive" based on the different levels of evidence required by the two bodies. *Ford*, 170 Fed. Cl. at 467.[5]

Indeed, there are differences between the VA system and the BCNR for purposes of presenting evidence. For PTSD, the VA requires the veteran to present "medical evidence diagnosing the condition in accordance with [38 C.F.R.] § 4.125(a) of this chapter; a link, established by medical evidence, between current symptoms and an in-service stressor; and credible supporting evidence that the claimed in-service stressor occurred." 38 C.F.R. § 3.304(f). Here, the VA faulted Ford for not presenting evidence of an "in-service stressor." ECF No. 81-3 at AR 651-52. To be sure, the VA concluded that his claim for service connection for PTSD was denied "on the basis that the available evidence does not substantiate that an in-service stressor actually exists or occurred during your active duty." *Id.* at AR 652. The court noted in its Opinion that the BCNR's reliance on the VA's conclusion was shaky, at best. The court reasoned:

> Although the question is not squarely before the Court, the VA's conclusions, which the BCNR adopted, present some logical holes. If Ford was disciplined and later released from active duty based on his absence on the day a terrorist attack took place, and then Ford claims that attack is his in-service stressor, ECF No. 63-2 at 297, there should be little difficulty for the BCNR to verify such an event took place. But the VA stated that it was "unable to verify any of [Ford's] in-service stressors[.]" ECF No. 63-1 at 79. While that may be true for the VA, the BCNR's records are replete with mentions of the Djibouti incident. ECF No. 78 at 1.

*Ford*, 170 Fed. Cl. at 467 n.11.

Regardless, at the VA, the burden to produce relevant evidence rests solely on the veteran. *See generally* 38 C.F.R. 3.304(f). But that is different for the Navy's LOD determination. The Navy presumes that injuries discovered on active duty were incurred in the line of duty. SECNAVINST 1770.3D, ¶ 6(k)(l) ("[I]t 'shall be presumed that an illness, injury, or disease was incurred in the Line of Duty[.]'"). And this presumption can only be overcome by clear and convincing evidence that the injuries were not incurred in the line of duty or were due to a sailor's misconduct. SECNAVINST 1850.4E, Enc. (3), ¶ 3410 ("Any disease or injury discovered after a member enters active military service . . . is presumed to have been incurred 'in the line of duty.' Clear and convincing evidence is required to overcome this presumption."). Accordingly, the Navy has the burden to show that the presumed injury did not incur in the line

---

[5] *See also Dye v. Mansfield*, 504 F.3d 1289, 1292 (Fed. Cir. 2007) ("The presumption that an 'injury or disease' incurred during service 'will be deemed to have been incurred in line of duty and not the result of the veteran's own misconduct' deals with the situation where there is a question whether the in-service medical condition was incurred in 'line of duty' or outside such duty because it resulted from the veteran's own misconduct. It has nothing to do with the only question in the present case: whether Dye's post-service medical problems were service connected, i.e., were caused by his in-service medical problems.").

4

of duty if discovered while on active duty. *Cf. Holton v. Shinseki*, 557 F.3d 1362, 1367 (Fed. Cir. 2009) (evaluating a line-of-duty presumption and concluding that the "presumption can be rebutted only if the *government shows* that the injury or disease was caused by the veteran's own willful misconduct or abuse of alcohol or drugs") (emphasis added). Thus, the point the court was making was simply a matter of logic. The fact that Ford may have failed to establish that certain injuries were service connected by a preponderance of the evidence at the VA does not establish that there is clear and convincing evidence that these injuries were not LOD for the Navy's purposes. The Navy also did not follow its own procedures in failing to order a line-of-duty investigation. "An inquiry used to determine whether an injury or disease of a member performing military duty was incurred in a duty status; if not in a duty status, whether it was aggravated by military duty; and whether incurrence or aggravation was due to the member's intentional misconduct or willful negligence." ECF No. 81-2 at AR 160.

At oral argument on the motions for judgment on the administrative record, counsel for the Government conceded that, relative to the service-connection issue, "the VA and the Navy have two different sort of aims." ECF No. 110 at 59:14-15. The court went on to clarify, mentioning that "the VA does seem to have a very different regulatory regime to determine whether something is service connected, which I get, but I don't know that it sheds much light on the Navy's requirements. You know, *I'm not sure I see in the Navy's regulations whether there has to be an in-service stressor for PTSD to be considered line of duty*." *Id.* at 60:8-15 (emphasis added).

The Government points to *Shedden v. Principi*, 381 F.3d 1163, 1166 (Fed. Cir. 2004), where the Federal Circuit held that "'service-connected' means the same thing as 'incurred in the line of duty.'" ECF No. 117 at 2. The court agrees—but that does not answer the question in this case. Instead, the controlling question here is the difference in the burdens of proof between the VA standard and the BCNR standard. The Government's reply brief does not meaningfully address the burden point. Instead, the Government just asserts that "the only 'distinction' LCDR Ford makes between the VA service-connection inquiry and the LOD inquiry is 'the proof burden.'" *Id.* at 3. But that distinction is what matters.

When writing its prior Opinion, the court understood the arguments and the record to show that Ford sought PTSD treatment and never received it. 170 Fed. Cl. at 468. In reconsidering the record, it is possible that is not the case. Although the BCNR agreed with its medical advisory opinion that there was nothing in Ford's DoD records regarding PTSD other than his uncorroborated statements, that does not appear to address the full record.

In this case, by the Government's own arguments, the BCNR only considered two pieces of evidence as it relates to Ford's PTSD: the VA's determination and Ford's own "uncorroborated statements regarding his 'mental health[.]'" ECF No.117 at 4. But the record contains multiple references to Ford's (at least potential) PTSD—more than just Ford's "uncorroborated" statements. Indeed, beginning in 2014, before Ford was released from active duty, he began to complain of mental health symptoms. *See, e.g.*, ECF No. 82-2 at AR 550, 560, 562 & 565. And the record indicates that DoD medical officials referred him for behavioral health treatment apparently due to PTSD concerns. *See, e.g.*, *id.* at AR 562 (clinician requested PTSD evaluation in November 2014); *id.* at AR 566 (providing PTSD handouts and explaining

5

that "Patient was referred to BH department in order to consider different options of treatment for his emotional condition").

Those notations are from what appears to be DoD medical professionals[6] are hard to square with the BCNR's medical advisor's claim that Ford "was not seen for mental health concerns within the DoD Health System." ECF No. 82-2 at AR 507. Further, the medical advisor did not mention the behavioral health referrals discussed above, but stated that the "Nurse Practitioner Health Care Provider Review, Interview, and Assessment referral recommendations did not include a need for Behavioral or Mental Health clinic intervention[.]" *Id.* The advisor also noted that "[w]hile the diagnosis of PTSD is not being disputed, there is insufficient evidence that this diagnosis prevented the applicant from performing [his duties.]" *Id.* If the advisory opinion considered the referrals to behavioral health treatment from DoD providers, it does not explain how those notes do not reflect being seen within the DoD Health System. The court certainly does not hold that the caregiver notes discussed above constitute being seen for mental health concerns within the DoD system (and presumably discovery for LOD presumption purposes), but the BCNR will need to address these entries in making such a conclusion.

Taken together, Ford's medical records indicate that it is possible that his PTSD was discovered during his active service. *See* SECNAVINST 1850.4E, Enc. (3), ¶ 3410 ("Any disease or injury *discovered* after a member enters active military service . . . is presumed to have been incurred 'in the line of duty.' Clear and convincing evidence is required to overcome this presumption.") (emphasis added). Put another way, the court is not telling the BCNR how to consider these references to PTSD concerns in DoD medical records—the court just needs the BCNR to address these issues on remand and explain its consideration of them.

The court is back to where it started, if the Navy denied Ford treatment for a condition he was complaining about, it strikes the court as difficult to conclude that his PTSD was not "discovered" while on active duty. Burying one's head in the sand is not a means of avoiding discovery. But the court is not re-weighing the evidence—it is pointing out that the BCNR did not address certain relevant evidence in the record that may weigh against denying LOD for Ford's claimed PTSD. All the court is saying is the BCNR must do so.

To be clear, it may be that the notations in Ford's record regarding PTSD and referral to behavioral health treatment (apparently for PTSD concerns) do not establish a "discovery." But if they do not, the BCNR will need to explain why. And if the record does establish the discovery of PTSD, then the BCNR will need to explain what clear and convincing evidence overcomes the LOD presumption. At the end of the day, the court simply wants the BCNR to address all the relevant evidence, including that described above, and produce a decision for the court's review.

For the avoidance of doubt, it appears to the court, as stated in the prior Opinion, that the DOD's LOD presumption applies to this case. As explained above, there are several indications

---

[6] *See* ECF No. 82-2 at AR 563 (describing treatment facility as "NBHC NSA MID-SOUTH," which is a "Naval Branch Health Clinic" in Memphis, Tennessee); *id.* at AR 566 (same for "NH Pensacola FL," which is the Naval Hospital in Pensacola, Florida).

that the Navy discovered Ford's claimed PTSD while he was on active duty. Although the court does not yet have the benefit of the BCNR's explanation of the import of these record materials, there is enough to require remand. After the BCNR renders a more fulsome decision, the court will have a fuller record to consider the application of the LOD presumption anew.

Therefore, the court does not grant reconsideration of its Opinion on this ground.

### B.     Investigation

The Government also asserts that the BCNR is not an investigative body; therefore, the court erred in directing it to undertake an investigation. On this point, the court concedes that its Order was inartfully worded. The Government is correct that the BCNR is not an investigative body. *Williams v. United States*, 163 Fed. Cl. 523, 541 (2022). Instead, as discussed above, the court intended to convey that the BCNR should, given the different standards for establishing LOD and service connection, evaluate and consider all relevant evidence in the record and address that evidence in its decision. That is the point the court was trying to get across—that the BCNR needed to engage in its own *consideration* of Ford's claims under DoD standards rather than rely solely on the VA determination that Ford's PTSD was not service-connected. The court thus grants-in-part the motion to reconsider and will amend the Opinion to the extent it called for an "investigation," *e.g.* 170 Fed. Cl. at 467-68.

### C.     Liberal Consideration

The Government also argues that the court erred by finding that the Kurta Memo's liberal-consideration requirement applied to Ford's LOD claim. ECF No. 114 at 14-15. Here, the court apologizes for the confusion that it caused. Through numerous red-lines and revisions, the reference to the Kurta Memo was inadvertently moved to the LOD section of the decision. It should have been in the beginning of the next section dealing with Ford's *disability* claim for PTSD, not in the section dealing with his LOD claim for PTSD. Thus, the court grants-in-part the government's motion to reconsider and will amend the Opinion insofar as it stated that the Kurta Memo applies to the LOD determination, 170 Fed. Cl. at 468, rather than the PTSD disability claim.

## IV.    Conclusion

The court **GRANTS-IN-PART** and **DENIES-IN-PART** the Government's motion as explained above and amends those portions of *Ford v. United States*, 170 Fed. Cl. 458 (2024) calling for an "investigation" rather than consideration of the entire record or implying that the Kurta Memo applies to an LOD determination rather than a disability claim.

The court extends the remand of this case until **September 30, 2024**, so that the BCNR may incorporate the guidance and clarifications from this order.

It is so ORDERED.

s/ Edward H. Meyers
Edward H. Meyers
Judge
